IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAYOR & CITY COUNCIL OF BALTIMORE,

    Plaintiff,

v.

PURDUE PHARMA L.P., et al.,

    Defendants.

Civil Action No. GLR-18-800

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Mayor & City Council of Baltimore's ("Baltimore City" or the "City") Motion to Remand (ECF No. 7). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

### I.    BACKGROUND

Baltimore City is "a municipal corporation organized and existing under the laws of the State of Maryland." (Compl. ¶ 22, ECF No. 2). According to the City, opioid use "has disrupted the lives of its citizens, damaged its communities, and imposed overwhelming financial and logistical costs on its government." (Id. ¶ 17). As a result, the City "has expended extraordinary time, effort, and funds to combat the opioid epidemic." (Id. ¶ 18). For the purposes of this action, Baltimore City is a citizen of Maryland. (See id. ¶ 22).

Defendants Purdue Pharma L.P., Purdue Pharma, Inc., The Purdue Frederick Company, Inc. (collectively, "Purdue Pharma"), Teva Pharmaceuticals USA, Inc.,

Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Allergan, Plc, Actavis, Inc., Watson Laboratories, Inc., Actavis, LLC, Actavis Pharma, Inc., Endo Health Solutions, Inc., and Endo Pharmaceuticals, Inc. (collectively, the "Manufacturer Defendants") manufacture, market, and sell prescription opioid pain medications. (Id. ¶¶ 23–36). Each Manufacturer Defendant is not a citizen of Maryland, or in the case of the Purdue Pharma, the City could not identify the companies' citizenship. (Id. ¶¶ 23, 29, 31, 34).

Defendants Cardinal Health, Inc., McKesson Corporation, and AmerisourceBergen Drug Corporation (collectively, the "Distributor Defendants") distribute opioid medications to pharmacies, pain clinics, and other dispensaries across the country, including in Baltimore City. (Id. ¶¶ 37–42). Each Distributor Defendant is not a citizen of Maryland. (Id. ¶¶ 37, 39, 41).

Defendants Rosen-Hoffberg Rehabilitation and Pain Management Associates, P.A., Norman B. Rosen, and Howard J. Hoffberg (collectively, the "Rosen-Hoffberg Defendants") are healthcare providers in Baltimore City and the medical practice at which the alleged over-prescribing of opiates occurred. (Id. ¶¶ 43–45). Each Rosen-Hoffberg Defendant is a citizen of Maryland. (Id.).

The City filed the present action in the Circuit Court for Baltimore City, Maryland on January 31, 2018. (ECF No. 2). In its four-count Complaint, the City alleges: (1) public nuisance against all Defendants (Count I); (2) negligence against all Defendants (Count II); (3) violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq. (West 2018), against Manufacturer Defendants (Count III);

2

and (4) violation of the Maryland False Claims Act, Md. Code Ann., Gen. Prov. §§ 8-101 et seq. (West 2018), against Manufacturer Defendants (Count IV). (Compl. ¶¶ 248–80). The City seeks injunctive and monetary relief. (Id. ¶¶ (a)–(i)).

The thrust of the City's Complaint is that the Manufacturer Defendants fraudulently marketed and promoted opioids, the Rosen-Hoffberg Defendants fraudulently over-prescribed opioids, and the Distributor Defendants failed to limit fraudulent or suspicious distribution of opioids, causing widespread opioid use and exacting a high monetary cost to the City. (See id. ¶¶ 1–21). This action is one of hundreds of lawsuits filed against manufacturers, distributors, and prescribers of opioid products on behalf of state and local governments related to alleged harms stemming from opioid abuse. See Mar. 27, 2018 Cond'l Trans. Order (CTO-18) ["CTO-18"], In re Nat'l Prescription Opiate Litig. (MDL 2804), MDL No. 2804 (J.P.M.L.), ECF No. 1036.[1]

On December 5, 2017, prior to the City initiating this lawsuit, the United States Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the United States District Court for the Northern District of Ohio (the "MDL Court") to manage all federal cases in which "cities, counties, and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." Dec. 5, 2017 Trans. Order, MDL 2804, ECF No. 328.

---

[1] The Court includes the ECF numbers for the filings in MDL 2804 for ease of reference.

On March 27, 2018, the JPML conditionally transferred this action to the MDL Court. CTO-18, MDL 2804, ECF No. 1036. On April 2, 2018, the City filed a Notice of Opposition to the Conditional Transfer Order. Notice Opp'n Cond'l Trans. Order (CTO-18), MDL 2804, ECF No. 1088. The City filed a Motion to Vacate the Conditional Transfer Order on April 16, 2018. Pl.'s Mot. Vacate Cond'l Trans. Order (CTO-18), MDL 2804, ECF No. 1213.

Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo") filed a Notice of Removal from the Circuit Court to the United States District Court for the District of Maryland on March 16, 2018. (ECF No. 1). On March 19, 2018, the City filed a Motion to Remand. (ECF No. 7). Endo filed an Opposition on March 26, 2018. (ECF No. 27). The City filed a Reply on March 29, 2018. (ECF No. 32).

## II. DISCUSSION

**A. Standard of Review**

The party seeking removal carries the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). The Court must strictly construe removal jurisdiction because removal jurisdiction "raises significant federalism concerns." Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)). Accordingly, if federal jurisdiction is doubtful, the Court should grant a motion to remand. Id. (citing In re Bus. Men's Assur. Co. of Am., 992 F.2d 181, 183 (8th Cir.

1993); then citing Cheshire v. Coca-Cola Bottling Affiliated, Inc., 758 F.Supp. 1098, 1102 (D.S.C. 1990)).

A defendant may remove a state court action to federal court if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a) (2018). Federal district courts have original jurisdiction over civil actions that arise under federal law, 28 U.S.C. § 1331 (2018), or have an amount in controversy exceeding $75,000, exclusive of interests and costs, and complete diversity of citizenship, 28 U.S.C. § 1332(a) (2018). If a civil action is not based on a question of federal law, then a federal court may only exercise original jurisdiction based on diversity of citizenship.

The purpose of the diversity requirement "is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 553–54 (2005). As the U.S. Supreme Court has explained, "[t]he presence of parties from the same State on both sides of a case dispels this concern, eliminating a principal reason for conferring § 1332 jurisdiction over any of the claims in the action." Incomplete diversity, however, "destroys original jurisdiction with respect to all claims." Id. at 554.

**B.    Analysis**

Endo urges the Court to deny the City's Motion to Remand as to the Manufacturer and Distributor Defendants. As a preliminary matter, Endo maintains that the Court should defer its ruling on the Motion to permit the MDL Court to resolve all pending motions to remand collectively. Alternatively, Endo contends that the Court has diversity jurisdiction over this action because the Court can sever the Rosen-Hoffberg Defendants

under Federal Rule of Civil Procedure 21 or apply the fraudulent misjoinder doctrine. The Court begins by discussing whether it must defer to the MDL Court.

1. **Deference to MDL Court**

Endo argues that the Court should stay its ruling on the City's Motion to Remand to permit the MDL Court to resolve all pending remand motions in MDL 2804 collectively. The City contends that the Court should rule on its Motion expeditiously because this case does not belong in federal court and, therefore, should not be transferred to the MDL. The Court agrees with the City.

This Court has the authority to rule on pending motions any time before the JPML issues a transfer order. Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc., 807 F.Supp.2d 375, 381 (D.Md. 2011) (quoting Moore v. Wyeth–Ayerst Labs., 236 F.Supp.2d 509, 511 (D.Md. 2002)). Additionally, the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R.Proc.J.P.M.L. 2.1(d). Motions to remand are particularly appropriate for resolution by this Court because "if this Court does not have jurisdiction over th[e] matter, then neither will the MDL court." Stephens, 807 F.Supp.2d at 381; see also Manual for Complex Litigation § 20.131 (4th ed. 2004) (noting that motions to remand are "particularly appropriate for resolution before the [JPML] acts" because the right to litigate in the MDL depends on the existence of federal jurisdiction in the first place).

Consistent with this principle, several federal district courts have granted motions to remand before the JPML could transfer the cases to the MDL Court. See, e.g., Estate of Brockel v. Purdue Pharma L.P., et al., 1:17-cv-00521-KU-MU, slip op. at 1 (S.D.Ala. Mar. 29, 2018); Cty. of Falls v. Purdue Pharma L.P., et al., 6:18-cv-00047-RP-JCM, slip op. at 7 (W.D.Tex. Mar. 28, 2018); Cty. of Delta v. Purdue Pharma L.P., et al., 4:18-cv-00095-ALM, slip op. at 9 (E.D.Tex. Mar. 22, 2018); Cty. of Dallas v. Purdue Pharma L.P., et al., 3:18-cv-00426-M, slip op. at 7 (N.D.Tex. Mar. 7, 2018); Brooke Cty. Comm'n, et al. v. Purdue Pharma L.P., et al., 5:18-cv-00009, slip op. at 17 (N.D.W.Va. Feb. 23, 2018) (granting Motions to Remand in eight cases brought by counties in West Virginia); New Hampshire v. Purdue Pharma, et al., 1:17-cv-00427-PB, slip op. at 11 (D.N.H. Jan. 9, 2018); Cty. of Hopkins v. Endo Health Solutions Inc., et al., 4:17-cv-00845-ALM, slip op. at 2 (E.D.Tex. Dec. 20, 2017); Staubus v. Purdue Pharma, L.P., et al., 2:17-cv-122-TAV-CLC, 2017 WL 4767688, at *8 (E.D.Tenn. Oct. 20, 2017). But see St. Bernard Parish Gov't v. Purdue Pharma LP, et al., 2:18-cv-02717-NJB-DEK, slip op. at 6 (E.D.La. Mar. 29, 2018) (granting a stay pending a decision on the transfer to the MDL Court); Cty. of Floyd v. Purdue Pharma L.P., et al., No. 7:17-cv-00186-GFVT, slip op. at 4 (E.D.Ky. Jan. 22, 2018) (staying case and deferring its decision on plaintiff's motion to remand pending decision on transfer to the MDL Court).

Here, the JPML has yet to issue an order transferring this case to the MDL Court. Additionally, the existing conditional transfer order does not limit this Court's jurisdiction to rule on pending motions. See R.Proc.J.P.M.L. 2.1(d). Because motions to remand are particularly appropriate for resolution before transfer to the MDL, the Court

is well within its authority to rule on the City's Motion to Remand at this time. See Stephens, 807 F.Supp.2d at 381.

Accordingly, the Court next considers the merits of the City's Motion to Remand.

**2.     Motion to Remand**

Where, as here, the removing party invokes diversity jurisdiction, it is that party's burden to demonstrate that diversity is "complete"—in other words, that no defendant in the case is a citizen of the same state as any plaintiff. See Mulcahey, 29 F.3d at 151 (citing Wilson, 257 U.S. 92); see also Cent. W.Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

In the present case, diversity is incomplete on the face of the Complaint because the City and the Rosen-Hoffberg Defendants are all citizens of Maryland. Nonetheless, Endo urges the Court to deny the City's Motion to Remand for two reasons. First, Endo maintains that the Rosen-Hoffberg Defendants are severable under Rule 21 because they are unnecessary and dispensable parties. Second, Endo contends that the Court may ignore the citizenship of the Rosen-Hoffberg Defendants under the fraudulent misjoinder doctrine. The Court considers these arguments in turn.

      **i.     Rule Severability**

At bottom, the Court concludes that the Rosen-Hoffberg Defendants are not severable under Rule 21 because they are necessary and dispensable parties.

Rule 21 grants the Court discretion to sever nondiverse parties to achieve complete diversity. See Koehler v. Dodwell, 152 F.3d 304, 308 (4th Cir. 1998). To do so, the Court must consider whether dismissal of the nondiverse party or parties will prejudice

any of the parties remaining in the case, and whether the presence of the nondiverse party provides a tactical advantage for one party. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 838 (1989). Additionally, the Court must evaluate whether a party is necessary and indispensable under Rule 19. Sullivan v. Calvert Mem'l Hosp., 117 F.Supp.3d 702, 705 (D.Md. 2015). A party is necessary if:

> the court cannot accord complete relief among existing parties; [ ] or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). Further, a necessary party is indispensable if the action cannot proceed without that party "in equity and good conscience." Sullivan, 117 F.Supp.3d at 705 (quoting Fed.R.Civ.P. 19(b)). If a nondiverse party is necessary and indispensable under Rule 19, then "diversity remains incomplete and the case must be remanded to state court." Id.

In Sullivan, the plaintiff asserted medical negligence claims against her healthcare providers and products liability claims against a medical device manufacturer in the same action. Id. at 703–04. On defendants' motions to sever, the plaintiff argued that the healthcare providers were necessary parties to her claims against the manufacturer because each set of defendants could blame plaintiff's injuries on the other if the cases were tried separately. Id. at 705. The Court disagreed, finding that the healthcare providers were not necessary parties because "the medical negligence claims . . . involve

9

legal standards and factual inquiries distinctly different from the products liability claims against the [manufacturer of the device]." Id. at 706. The Court further reasoned that resolution of plaintiff's medical negligence claim would not necessarily resolve her products liability claim. Id. The Court explained that the medical negligence claims "hinge on whether [the healthcare providers] deviated from the standard of care" while the products liability claims turn on whether the manufacturer "at an earlier point in time, improperly designed, manufactured, tested, advertised, and gave directions regarding use of the [device]." Id. at 707. The Court, therefore, exercised its discretion to sever and remanded the claims against the healthcare providers to state court. Id. at 707–08.

Here, by contrast, the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer Defendants. First, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. Additionally, the City alleges that the Manufacturer Defendants violated the Maryland False Claims Act by making false and misleading statements about the nature of opioids, thereby causing the Rosen-Hoffberg Defendants to supply City employees with massive quantities of prescription opioids. (Compl. ¶¶ 218–20, 272–80). The City also alleges that the Rosen-Hoffberg Defendants repeated and disseminated the Manufacturer Defendants' false messages about opioids and received payments directly from the Manufacturer Defendants. (Id. ¶¶ 212–14). Finally, the City alleges that the Manufacturer and Distributor Defendants "turned a blind eye" to the Rosen-Hoffberg Defendants' over-prescription of opioids. (Id. ¶¶ 222–25). As a result, facts regarding

10

the role of the Rosen-Hoffberg Defendants in the Manufacturer Defendants' alleged scheme help establish the City's claims against the Manufacturer Defendants. Put simply, the City's claims against the Rosen-Hoffberg Defendants do not "involve legal standards and factual inquiries distinctly different" from its claims against the Manufacturer Defendants. Sullivan, 117 F.Supp.3d at 706.

Because the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants, the Court concludes that the Rosen-Hoffberg Defendants are necessary and indispensable under Rule 19. Thus, the Rosen-Hoffberg Defendants are not severable under Rule 21. The Court, therefore, will not sever the Rosen-Hoffberg Defendants to create complete diversity among the parties.

The Court next turns to whether complete diversity is achieved under the fraudulent misjoinder doctrine.

### ii. Fraudulent Misjoinder

Endo urges the Court to apply the fraudulent misjoinder doctrine to ignore the citizenship of the nondiverse Rosen-Hoffberg Defendants in this action. The City contends that the United States Court of Appeals for the Fourth Circuit has yet to adopt the fraudulent misjoinder doctrine and, in any event, the Rosen-Hoffberg Defendants are not fraudulently misjoined. The Court agrees with the City.

Fraudulent misjoinder "is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal."

Stephens, 807 F.Supp.2d at 379 (quoting Wyatt v. Charleston Area Med. Ctr., Inc., 651 F.Supp.2d 492, 496 (S.D.W.Va. 2009)). The Fourth Circuit has neither adopted nor rejected the fraudulent misjoinder doctrine, and our sister district courts are split on the issue. Cty. Comm'n of McDowell Cty. v. McKesson Corp., 263 F.Supp.3d 639, 645 (S.D.W.Va. 2017).

Nonetheless, this Court applied the fraudulent misjoinder doctrine in Stephens. 807 F.Supp.2d 375 at 381–85. In doing so, the Court concluded that the relevant inquiry is whether a plaintiff has satisfied the requirements of Rule 20(a), which governs permissive joinder of claims. Id. at 381. Rule 20(a) permits a plaintiff to join parties in a single action if: (1) a right to relief is asserted against the defendants with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) a common question of law or fact will arise in the action. Id. For the first prong of Rule 20(a), courts generally construe this requirement liberally and conclude that claims arise from the "same transaction or occurrence" if they have a "logical relationship" to one another. Id. at 382. As to the second prong, joinder is permitted "wherever there will be at least one common question of law or fact." Id. at 384 (citing 7 Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice and Procedure § 1653 (4th ed. 2009)). Further, "the transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts . . . and therefore are to be read as broadly as possible . . . to promote judicial economy." Id. (first alteration in original) (Miller, Cooper & Steinman, supra, § 1653).

Applying the first prong of Rule 20(a) to the present case, it is clear that the City's claims against the Rosen-Hoffberg Defendants are logically related to its claims against the Manufacturer and Distributor Defendants. As discussed above, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. Further, the City alleges that the Manufacturer Defendants' false and misleading statements about the nature of opioids caused the Rosen-Hoffberg Defendants to supply City employees with massive quantities of prescription opioids. (Compl. ¶¶ 218–20, 272–80). The City also alleges that the Rosen-Hoffberg Defendants received payments directly from the Manufacturer Defendants. (Id. ¶¶ 211–13). Because the City's claims against the Rosen-Hoffberg Defendants are logically related to its claims against the Manufacturer and Distributor Defendants, the Court concludes that the claims arise from the "same transaction or occurrence." Stephens, 807 F.Supp.2d at 384.

As to the second prong, the City's allegations against the Rosen-Hoffberg Defendants and the Manufacturer and Distributor Defendants raise at least one common question of law or fact. For example, the issue of whether the Manufacturer Defendants violated the Maryland False Claims Act turns, in part, on whether the Manufacturer Defendants caused the Rosen-Hoffberg Defendants to present "false or fraudulent claims" or use "false statements to get false or fraudulent claims paid or approved by the City." (Compl. ¶ 275). The City's allegations, therefore, raise at least one common question of law and fact. Stephens, 807 F.Supp.2d at 384–85. Because both prongs of

Rule 20(a) are satisfied, the Court concludes that the Rosen-Hoffberg Defendants are not fraudulently misjoined. Id. at 385.

In sum, the Rosen-Hoffberg Defendants are not severable under Rule 21 and are properly joined. The Court, therefore, cannot sever the Rosen-Hoffberg Defendants or ignore their citizenship to create complete diversity among the parties. Because there is not complete diversity among the parties, the Court does not have subject matter jurisdiction over this action. Accordingly, the Court will grant the City's Motion to Remand.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Mayor & City Council of Baltimore's Motion to Remand (ECF No. 7). A separate order follows.

Entered this 25th day of April, 2018

/s/
George L. Russell, III
United States District Judge